## Voluntary Payment of Escheatable Funds

LOIS G. FORER, Deputy Attorney General, and THOMAS D. MCBRIDE, Attorney General, April 1, 1958. —You report that the Division of Escheats of the Department of Revenue receives unclaimed funds pursuant to the Act of June 25, 1937, P. L. 2063, as amended, 27 PS §§434-447, and the Act of June 7, 1915, P. L. 878, as amended, 27 PS §§241-301. The banks and companies subject to the above acts who are required to report escheatable funds make voluntary payment of such items. You ask whether an official receipt of the Department of Revenue relieves them from any and all liability and responsibility on such items voluntarily paid to the Commonwealth without a court order.

1. The Act of 1937 provides that every company doing business under the laws of this Commonwealth shall report to the Department of Revenue the following categories of items:

1. Dividends or profits declared by it and unclaimed for six or more successive years. Debts and interest on debts due by it to any creditor where such payments have been unclaimed for six or more successive years.

2. Customers advances, tolls or deposits due and owing and unclaimed for six or more successive years.

3. Proceeds of insurance policies awaiting due proof for payment or surrender value of policies which have been surrendered or premiums, dividends and profits or accretions thereon, any of which are held or owing for seven successive years.

4. Stocks or certificates of beneficial interest demandable which have been unclaimed for six or more successive years.

This statute provides that the above items shall be escheatable and establishes a procedure for the enforcement of the escheat. The act further provides that any person legally entitled to any moneys which have been paid into the Treasury under the provisions of an order of court entered upon petition of the Attorney General for the payment of such moneys into the State Treasury without escheat may apply at any time for a refund and, upon proof of ownership, shall receive a full refund with interest at the rate of two percent per annum. The statute does not provide for a voluntary payment without court order. It is clear that the items required to be reported are escheatable. Failure to report the items subjects the company to a penalty.

Where the company is willing to make payment voluntarily, there is no reason why it should be forced to take an adversary position. This precise question has never been adjudicated. However, in Commonwealth v. Dollar Savings Bank, 259 Pa. 138, 102 Atl. 569 (1917), the Supreme Court of Pennsylvania indicated that the payment to the State as custodian of abandoned property relieves the prior custodian of

any liability. In the cited case, the Commonwealth sued to recover unclaimed deposits under the Act of April 17, 1872, P. L. 62, 27 PS §§302-305. That act, like the Act of 1937, created a presumption of abandonment after a lapse of years. Like the Act of 1937, it also gave the rightful owner an unlimited right to assert his claim of ownership. The bank raised constitutional objections to the statute and further asserted that it would be subject to liability to the rightful owner. The statute provided that a receipt for the amounts paid over to the State Treasurer "shall be a full and sufficient discharge to such saving fund, institution or bank from any further liability to any such depositor." The court pointed out that since the State had jurisdiction to take over custody of apparently abandoned property and since the bank was protected against any claim, there could be no prejudice either to the bank or to the depositor and that the act simply transferred the liability from the original depositary to the Commonwealth of Pennsylvania.

The Act of 1937 does not contain a provision with respect to discharge of liability upon a receipt of the State Treasurer. However, the principles involved in both statutes are identical. Both acts make escheatable deposits which have been dormant for a period of years. Both acts provide that the custody of such property be transferred from the bank or company holding these funds, which clearly are the property of other individuals, to the Commonwealth of Pennsylvania, which then assumes custody of such moneys. Upon proof of ownership, the Commonwealth is required to make payment to the lawful owner. Under the 1937 act, the lawful owner receives not only the face amount of his claim but also two percent interest. A receipt from the Commonwealth as custodian or bailee of these funds to the bank or company which had been holding the funds would certainly serve to protect the bank or company from a claim by the law-

ful owner who could always assert his claim against the Commonwealth. It should be noted that this right to reclaim the funds exists only when the payment is made "without escheat". Accordingly, you are advised that when funds are voluntarily paid to the Department of Revenue, under the Act of 1937, as amended, and when such funds are taken by the Commonwealth "without escheat", a receipt of the department for the funds will relieve the company or bank so paying from all liability.

2. The Act of June 7, 1915, P. L. 878, is a similar statute which provides for the reporting by banks, safe deposit companies, trust companies and other corporations, except mutual saving societies not having a capital stock which receive deposits of money. Deposits which have been dormant for seven or more successive years are made escheatable. Property received for storage or safekeeping which has remained without access thereto by the owner for 10 successive years is made escheatable. With respect to the various types of property made escheatable under this act, specific procedures are provided. The act further provides, in section 8, that at any time within 10 years after the payment into the State Treasury of such deposits under the provisions of section 7 of the act, the lawful owners or their heirs may apply to the State Treasury for the moneys so escheated, provided they have not appeared or had actual notice in the proceedings to escheat.

This act, like the other, has no provision for voluntary payment, nor does it provide for a discharge of liability to the company which has had custody of the funds prior to the escheat. It is obvious that if the funds are paid to the State Treasury pursuant to a court order, the company so paying is relieved of all liability to the rightful owner. In like manner, if the funds are voluntarily paid to the State treasury in

obedience to a valid law, the company is relieved of liability to the lawful owner. In Security Savings Bank v. State of California, 263 U. S. 282, 44 S. Ct. 108, 68 L. Ed. 301 (1923), the United States Supreme Court, in sustaining the constitutionality of the California escheat law, held:

"If the deposit is turned over to the State in obedience to a valid law, the obligation of the bank to the depositor is discharged." See also Philadelphia Electric Company Case, 352 Pa. 457, 43 A. 2d 116 (1945).

The 1915 act requires notice by publication. This procedure should be complied with so that rightful owners of such property will receive notice and be able to present their claims either to the company or to the Commonwealth within a reasonable period of time. It should be noted that the rightful owner has only 10 years from the date of payment within which to make application for his property and that if he receives notice of such escheat he is deprived of this right. The rightful owner is not disadvantaged by this provision. Without it, he would be subject to the six years statute of limitations which would run from the time the debt was due. See C. J. S. Limitations of Acts, §109, which states:

"In general a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement, or when there is a remedy available; and whenever one person may sue another a cause of action has accrued and the statute of limitations begins to run, but not until that time. So, whether at law or in equity, the cause of action arises when, and only when, the aggrieved person has the right to apply to the proper tribunal for relief. The statute does not attach to a claim for which there is no right of action, and does not run against a right for which there is no corresponding remedy or for which judgment cannot be ob-

tained. The true test, therefore, to determine when a cause of action has accrued is to ascertain the time when plaintiff could first have maintained his action to a successful result, regardless of the time when actual damage results; the fact that he might previously have brought a premature or groundless action is immaterial. . . ." See Penns Creek Municipal Authority v. Maryland Casualty Company, 120 F. Supp. 549 (M. D. Pa., 1954). See also Swearingen v. Sewickley Dairy Co., 198 Pa. 68, 47 Atl. 941 (1901).

Since, if notice is given, the rightful owners of the escheatable property are not deprived of any rights, it would be a vain and futile act to require the filing of a petition and an answer and an adjudication by the court to accomplish the transfer of admittedly escheatable funds to the State Treasury. It is presumed that the legislature would not intend a result that is absurd: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 52, 46 PS §552.

The voluntary payment of escheatable funds to the State Treasury constitutes compliance with the escheat laws only to the extent of the sums so paid and does not in any way prevent or estop the Commonwealth from asserting claims to other escheatable funds or property held by such companies.

It is our opinion, and you are accordingly advised, that companies voluntarily paying to the State Treasury escheatable funds "without escheat" under the Act of 1937 and receiving an official receipt of the Department of Revenue are relieved of all liability to the rightful owners of such funds. Companies which give proper notice to the lawful owners of escheatable funds and make voluntary payment of such funds to the State Treasury under the Act of 1915 and receive an official receipt of the Department of Revenue are also relieved of liability to the rightful owners of such funds.